FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SEP 19 2024

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Caitlin Baunsgard
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) 2:23-CR-0070-MKD-2 |
| v. | ) |
| | ) PLEA AGREEMENT |
| CHRISTOPHER BERCIER, | ) |
| Defendant. | ) |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Caitlin Baunsgard, Assistant United States Attorney for the Eastern District of Washington, and Defendant, CHRISTOPHER BERCIER ("Defendant"), both individually and by and through Defendant's counsel, Curran Dempsey, agree to the following Plea Agreement:

1. <u>Guilty Plea and Maximum Statutory Penalties</u>:

Defendant agrees to enter a plea of guilty to Count 2 of the Indictment filed on June 21, 2023, charging Defendant with Possession of a Stolen Firearm, in violation of 18 U.S.C. §§ 922(j), 924(a)(2), a Class C felony.

Defendant understands the following potential penalties apply:
    a.    a term of imprisonment of not more than 10 years;
    b.    a term of supervised release of not more than 3 years;

PLEA AGREEMENT - 1

  c. a fine of up to $250,000; and

  d. a $100 special penalty assessment.

2. <u>Supervised Release</u>:

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

  a. 5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

  b. 3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

  c. 2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. <u>Potential Immigration Consequences of Guilty Plea</u>:

If Defendant is not a citizen of the United States, Defendant understands the following:

  a. pleading guilty in this case may have immigration consequences;

  b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

  c. removal from the United States and other immigration consequences are the subject of separate proceedings; and

PLEA AGREEMENT - 2

    d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

4. <u>The Court is Not a Party to the Plea Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

    a.    sentencing is a matter solely within the discretion of the Court;

    b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

    f.    the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

5. <u>Waiver of Constitutional Rights</u>:

Defendant understands that by entering this plea of guilty Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

    a.    The right to a jury trial;

PLEA AGREEMENT - 3

  b. The right to see, hear and question the witnesses;

  c. The right to remain silent at trial;

  d. The right to testify at trial; and

  e. The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6. <u>Elements of the Offense</u>:

The United States and Defendant agree that to convict the Defendant of Possession of a Stolen Firearm, in violation of 18 U.S.C. §§ 922(j), 924(a)(2), the United States would have to prove beyond a reasonable doubt the following elements:

> *First*, on or about September 9, 2022, in the Eastern District of Washington, Defendant knowingly possessed at least one of the firearms charged in the Indictment;
>
> *Second*, at the time Defendant possessed the firearm(s), Defendant knew or had reasonable cause to believe that the firearm(s) were stolen; and
>
> *Third*, the possession of the firearm(s) was in or affecting interstate or foreign commerce.

7. <u>Statement of Facts and Stipulation</u>:

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

PLEA AGREEMENT - 4

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement. The parties further agree and stipulate that this factual basis is simply a summary to support the plea, it does not contain all facts which could be proven by the United States.

The Department of Homeland Security Investigations ("HSI") and the Columbia River Drug Task Force ("CRDTF") was conducting a long-term investigation into drug and gun trafficking occurring in the greater Chelan, Douglas, and Grant County areas. During the investigation, they learned of the theft of a large amount of firearms and ammunition from a storage unit in the Wenatchee, Washington area that occurred on or about September 9, 2022.

*Theft of Firearms and Ammunition*

The CRDTF and HSI contacted the victim of the theft who reported 3 large gun safes containing approximately 75 firearms as well as thousands of rounds of ammunition were stolen out of his storage unit. The victim advised he had been collecting those firearms over the years as well as inherited some from his family. He also noted he had several military-style OD Green ammunition containers and several soft-sided coolers full of ammunition that were stolen out of his storage unit as well. The victim advised the lock had been cut on his unit. The victim was able to provide a detailed list of the stolen firearms.

On September 16, 2022, Defendant and Demetrio PAZ ("PAZ") were observed at PAZ' residence, entering and exiting with various bags, and then leaving the location. A traffic stop was conducted on their vehicle. A search warrant was conducted on the vehicle, and 2 handguns were located, one in Defendant's backpack and the other in PAZ' backpack. The serial numbers had been scratched off of both firearms; however, matched the physical descriptions of 2 of the firearms stolen from the storage unit, a Colt revolver and an H&R Inc. revolver. A search warrant was

PLEA AGREEMENT - 5

subsequently executed at PAZ' residence and law enforcement located, among other items, a black gun safe, a green gun safe, a soft zippered pistol case, an empty blue insulated soft sided cooler with "16 GA" written on it, and an empty green insulated soft sided cooler. The victim of the firearm theft identified the soft-sided coolers as being what he had kept some of his ammunition in when it was in his storage unit.

Defendant provided a post-*Miranda* statement wherein, in summary, he admitted to committing the theft from the storage unit and did so with PAZ and CROWELL. Defendant estimated they stole approximately 40-50 firearms and intended to the sell them.

A Bureau of Alcohol, Tobacco, Firearms, and Explosives Interstate Nexus expert has opined that based on the make / model / serial numbers of the firearms provided by the victim, the presence of those firearms (which were not manufactured in Washington) affected interstate and/or foreign commerce. Defendant stipulates and agrees to this.

*Cooperating Defendant Information*

A cooperating defendant ("CD1") was contacted and advised he/she had knowledge of the robbery of a large amount of firearms from a storage unit in the Wenatchee area. CD1 ultimately provided photographs of approximately 14 firearms purported to be from the storage unit robbery, and the victim identified the firearms as some of his that had been stolen. CD1 advised that Demetrio PAZ, Ashley CROWELL, and Defendant committed the robbery and had taken one of the stolen gun safes to a particular residence in Wenatchee on September 9, 2022. Once there, they forcefully opened the safe and unloaded the firearms. After they successfully opened the safe, PAZ advised there were 2 more gun safes they were going to steal as there were no security cameras at the storage unit. CD1 advised that several other individuals had possession of some of the stolen firearms that they intended to trade for drugs in the Yakima, Washington area.

PLEA AGREEMENT - 6

Another cooperating defendant ("CD2") came forward and advised he/she had information of the theft of firearms from the storage unit. CD2 stated that Defendant, PAZ, and Ashely CROWELL arrived at a residence in Wenatchee with a gun safe they stated they had stolen; however, needed help getting it open. They all worked together to open the safe and retrieve the firearms inside, which were mostly long-rifles as well as some vintage-type firearms. Defendant and PAZ advised there were a couple more safes at the storage unit they were going to go get, but then needed to get a truck to load the safes into. CD2 further stated that CD2 made a deal to purchase all the stolen firearms, and kept the ones retrieved from the safe; however, they did not return with any more firearms.

8.  The United States Agrees:

    a.  *Not to File Additional Charges*:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

    b.  *Dismissal of Count 1 and Count 3*:

The United States agrees to dismiss Count 2 and Count 3 of the Indictment at the time of sentencing, provided Defendant does not breach the Plea Agreement.

9.  United States Sentencing Guideline Calculations:

Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations:

PLEA AGREEMENT - 7

a. *Base Offense Level and Relevant Conduct*:

The United States and Defendant agree Defendant's Base Offense Level is 14 as he was a prohibited person at the time the Defendant committed the offense. *See* USSG §2K2.1(a)(6).

b. *Specific Offense Characteristics*:

The United States and Defendant agree a 6-level increase as the offense involved between 25-99 firearms. *See* USSG §2K2.1(b)(1). The United States and Defendant agree a 4-level increase as one of the firearms had an obliterated serial number. *See* USSG §2K2.1(b)(4). The United States and Defendant agree a 4-level increase as the offense involved the trafficking in firearms. *See* USSG §2K2.1(b)(5). The United States and Defendant agree a 4-level increase as Defendant transferred the firearm with reason to believe it would be possessed in connection with another felony offense. *See* USSG §2K2.1(b)(6)(B).

c. *Role Adjustments*:

The United States and Defendant agree to recommend no role adjustment applies. *See* USSG §§3B1.1; 3B1.2.

d. *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a), (b), if Defendant does the following:

    i. accepts this Plea Agreement;

    ii. enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii. demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv. provides complete and accurate information during the sentencing process; and

PLEA AGREEMENT - 8

      v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

      e.    *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

      f.    *Criminal History*:

The United States and the Defendant have made no agreement and make no representations as to the Defendant's Criminal History Category, which shall be determined by the Court at sentencing after the Presentence Investigative Report is completed.

10.    <u>Length of Incarceration</u>:

The United States agrees to recommend a term of incarceration at the low-end of the advisory guidelines, as calculated by the United States. Defendant is free to recommend any legal sentence.

11.    <u>Supervised Release</u>:

The United States and Defendant each agree to recommend 3 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea,

PLEA AGREEMENT - 9

withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a. that Defendant participate and complete such drug testing and drug treatment programs as the Probation Officer directs, but not to exceed six non-treatment drug tests per month during the imposed term of supervised release; and

    b. that Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer.

12. <u>Criminal Fine</u>:

The United States and Defendant agree to recommend the Court impose no criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13. <u>Mandatory Special Penalty Assessment</u>:

Defendant agrees to pay the $100 mandatory special penalty assessment per count of conviction to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013.

14. <u>Restitution</u>:

The United States and Defendant agree that restitution is appropriate and mandatory, without regard to Defendant's economic situation, pursuant to 18 U.S.C. §§ 3663A, 3664, for the offense conduct to which Defendant has pled guilty for all victims, as defined by 18 U.S.C. § 3663A(a)(2), who were directly and proximately harmed by the offense conduct, including any representatives of any victim's estate.

PLEA AGREEMENT - 10

Furthermore, pursuant to 18 U.S.C. § 3663A(a)(3), Defendant voluntarily agrees to pay restitution for all losses, as defined by 18 U.S.C. § 3663A(b)(2)-(4), caused by Defendant's individual conduct, in exchange for the United States not bringing additional potential charges, regardless of whether counts associated with such losses will be dismissed as part of this Plea Agreement.

With respect to restitution, the United States and Defendant agree to the following:

    a.    *Restitution Amount and Interest*

The United States and Defendant stipulate and agree that pursuant to 18 U.S.C. §§ 3663, 3663A and 3664, the Court should order restitution in an amount to be determined at sentencing, and that any interest on this restitution amount, if any, should be waived. The victim is requesting $12,668.00 in restitution, amounting to the estimated value of the unrecovered firearms.

    b.    *Payments*

To the extent restitution is ordered, the United States and Defendant agree that the Court will set a restitution payment schedule based on Defendant's financial circumstances. 18 U.S.C. § 3664(f)(2), (3)(A). Regardless, Defendant agrees to pay not less than 10% of Defendant's net monthly income towards restitution.

    c.    *Treasury Offset Program and Collection*

Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant understands that the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets. 18 U.S.C. §§ 3572, 3613, and 3664(m).

PLEA AGREEMENT - 11

Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees fully to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees to provide waivers, consents, or releases requested by the U.S. Attorney's Office to access records to verify the financial information.

   d. *Notifications and Waivers*

Defendant agrees to notify the Court and the United States of any material change in Defendant's economic circumstances (e.g., inheritances, monetary gifts, changed employment, or income increases) that might affect Defendant's ability to pay restitution. 18 U.S.C. § 3664(k). Defendant also agrees to notify the United States of any address change within 30 days of that change. 18 U.S.C. § 3612(b)(1)(F). These obligations cease when Defendant's fine and restitution obligations are paid in full.

Defendant acknowledges that the Court's decision regarding restitution is final and non-appealable; that is, even if Defendant is unhappy with the amount of restitution ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or restitution order.

15. <u>Payments While Incarcerated</u>:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

PLEA AGREEMENT - 12

16. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17. <u>Waiver of Appeal and Collateral Attack Rights</u>:

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court. Defendant expressly waives his right to appeal his conviction and/or sentence.

Defendant also expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18. <u>Withdrawal or Vacatur of Defendant's Plea</u>:

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a.    this Plea Agreement shall become null and void;

    b.    the United States may prosecute Defendant on all available charges;

PLEA AGREEMENT - 13

  c. the United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

  d. the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

19. <u>Integration Clause</u>:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

PLEA AGREEMENT - 14

## Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____        9/19/24
Caitlin Baunsgard                    Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement, and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____        9-19-24
CHRISTOPHER BERCIER                  Date
Defendant

I have read the Plea Agreement and have discussed the contents of the Plea Agreement with Defendant. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in Defendant's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

_____        9-20-24
Curran Dempsey                       Date
Attorney for the Defendant

PLEA AGREEMENT - 15